IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KYLE KUROSKY,

       Petitioner,

v.                                                                                 Civil Action No. 1:18cv197
                                                                               (Judge Kleeh)

JENNIFER SAAD,

       Respondent.

### REPORT AND RECOMMENDATION

On October 18, 2018, the *pro se* petitioner initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petitioner challenges the Bureau of Prisons' ("BOP") calculation of his sentence and, in particular, the BOP's failure to properly credit his federal sentence with 13 months of time served in state custody. Petitioner paid the requisite filing fee on October 29, 2018. By Miscellaneous Case Order entered on November 30, 2018, this case was reassigned from Senior District Judge Irene M. Keeley to District Judge Thomas S. Kleeh. On February 26, 2019, the respondent was directed to show cause why the petition should not be granted. On March 18, 2019, the respondent filed a Motion to Dismiss, attaching memorandum in support, an affidavit and an exhibit. On March 19, 2019, a Roseboro Notice was issued. After being granted an extension of time, on May 28, 2019, Petitioner filed a document titled "Petitioner's Response to Motion to Dismiss."[1] On December 16, 2019, the Clerk of Court redocketed the "response" as a second motion for an extension of time; by Order entered the same day, Petitioner was granted a two-week extension of time. Despite having been granted the extension, Petitioner did not file a response within the allotted time.

---

[1] The "response" was not a response at all, but another request for a further extension of time.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2, the undersigned now issues his Report and Recommendation.

## I. Factual Background

On May 3, 2016, in this district, Petitioner was named in a one-count indictment with a forfeiture allegation;[2] he was charged with being a felon in possession of a firearm, in violation of Title 18, United States Code, §§ 992(g)(1) and 924(a)(2). Pursuant to the Government's oral motion to detain Petitioner on May 20, 2016, Petitioner was taken into federal custody.[3] Petitioner entered a plea to the charge on June 21, 2016.  On October 28, 2016, Petitioner was sentenced to a term of 70 months imprisonment to be served consecutive to the previously-imposed sentence that he was then serving in the West Virginia Division of Corrections, to be followed by three years supervised release.

Petitioner did not file a direct appeal or a motion to vacate under 28 U.S.C. § 2255.

## II. The Pleadings

**A. The Petition**

Petitioner alleges that the date of his federal offense was September 17, 2015 and he was sentenced on the federal charges on October 28, 2016. ECF No. 1-1 at 1. He contends that the Bureau of Prisons ("BOP") unlawfully computed his sentence, because it denied him 13 months credit for time served (apparently the 13 months and 11 days between those two dates), when his sentencing transcript clearly states he was to receive a "sentence of 70 months with credit for time served, three years of supervised release and no fine." Id. at 1 – 2.

---

[2] Petitioner's criminal case in this district is No. 1:16cr29.

[3] Petitioner was already incarcerated at the Huttonsville Correctional Center ("HCC") on a state court conviction and did not object to being detained. See May 20, 2016 Detention Order, Case No. 1:16cr29, ECF No. 11 at 1 ("Considering Defendant's current service of state sentence, Defendant's attorney represented to the court that Defendant does not object to being detained at this time. However, if circumstances change Defendant reserves his right to file a motion for bond in the future.").

Petitioner admits he did not administratively exhaust this claim before filing suit. ECF No. 1 at 7. He left blank the question asking why he did not do so. Id. at 8.

As relief, Petitioner requests that his sentence be recalculated to include time served. Id.

**B. Respondent's Motion to Dismiss, construed herein as Motion for Summary Judgment**

Respondent contends that this case should be dismissed, because Petitioner's federal sentence was ordered by this court to "run consecutive to the sentence of imprisonment currently being served in the West Virginia Division of Corrections." ECF No. 11 at 1. Further, the Respondent argues that Kuroski concedes, and BOP records confirm, that Kuroski never administratively exhausted his claim that the BOP improperly computed his sentence before filing this habeas action; Kuroski offered no explanation for not doing so; nor has he alleged that doing so would have been futile. Id. at 1 – 2. Respondent notes that Petitioner left blank the section on the Court-approved form § 2241 petition that asked why he did not pursue administrative relief. Id. at 5. Finally, Respondent notes that not only did Petitioner not administratively exhaust his present claim, since his incarceration, he has never filed any administrative grievances at all.[4] Id. at 4.

More specifically, Respondent asserts that during the sentencing hearing, although Kuroski's defense counsel did ask the Court to run his federal sentence partially or completely concurrent with the state sentence that Kuroski was already then currently serving, the Court specifically and emphatically denied that request. Id. at 6; see also Sentencing Transcript ("Transcript"), Case No. 1:18cr29, ECF No. 42 at 12, 16. Moreover, Respondent notes that the sentencing judge explained that Petitioner would arrive into BOP custody "after you complete another sentence which is for parole violation." See Transcript at 14 – 15. Finally, after imposing

---

[4] The records submitted by Respondent establish that as of the date of its response, Petitioner had never filed any grievances at all. See ECF No. 11-1 at 1 and 3.

the 70-month sentence, the District Judge noted that "[t]his term of imprisonment shall run consecutive to the imprisonment imposed by the State of West Virginia that you're currently serving." Id. at 16. Accordingly, Respondent argues that Petitioner's claim that he is entitled to credit on his federal sentence for any time spent in West Virginia state custody is factually unsupported and should be dismissed on that ground as well. Id. at 7.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have often cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations

omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (*citing* Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 - 52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Generally, a federal inmate must exhaust available administrative remedies before she files a habeas petition. See, *e.g.*, McClung v. Shearin, 90 Fed.Appx.444 (4th Cir. 2004); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001); Martinez v. Roberts, 98 F.3d 757 (3d Cir. 1996) (same); Greene v. Warden FCI Edgefield, 2017 WL 1458997 (D.S.C. 2017) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004) (same). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decision should be based; (3)

to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources… (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Alexander v. Hawk, 159 F.2d 1321, 1327-28 (11th Cir. 1998) (internal citations omitted).

However, because the statute authorizing habeas actions does not expressly require administrative exhaustion, Reeder v. Phillips, 2008 WL 2434003 at *2 (N.D. W.Va. June 12, 2008), this Court retains discretion to disregard the exhaustion requirement in "pressing circumstances." Id. at *3. However, exhaustion should only be excused where administrative review would be futile. Jaworski v. Gutierrez, 509 F.Supp.2d 573 (N.D.W. Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rules adversely. Reeder, 2008 WL 2434003 at *3.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[5] An inmate is not deemed to have exhausted his

---

[5] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended

administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In the instant case, the record is clear: Petitioner admits that he did not even initiate the process of exhausting his administrative grievances. ECF No. 1 at 7 - 8. Respondent attaches the sworn Declaration of Tiffanie Little, Legal Assistant with the BOP Mid-Atlantic Regional Office, averring that not only has Petitioner never challenged his sentence calculation with the BOP by using the administrative remedy procedure, during Petitioner's entire time in the BOP, he has never filed any administrative remedies at all. ECF No. 11-1 at 1; see also Kyle Kuroski Administrative Remedy Generalized Retrieval,[6] id. at 3. Nonetheless, in reviewing the record, including the transcript of Petitioner's underlying criminal sentencing, it appears certain that even if Petitioner had fully exhausted his administrative remedies on this issue, they would have been denied. Accordingly, the undersigned believes that exhaustion should be excused, and this matter should be decided on the merits.

**B. Sentence Calculation**

Review of Petitioner's contentions must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Therefore, the mere fact that a defendant has been sentenced in federal court does not commence his sentence. The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States

---

once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[6] This Administrative Remedy Generalized Retrieval does not reflect Kuroski's name, but it does identify him by his BOP No. 11712-087. See ECF No. 11-1 at 3.

v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for **any time he has spent in official detention prior to the date the sentences commences**: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Id. (emphasis added). Furthermore, a federal prisoner cannot receive double credit for detention time. U.S. v. Wilson, 503 U.S. 329, 337 (1992).

Where, as here, when a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him,...and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty . . .

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting In re Liberatore, 574 F.2d 78 (2nd Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd,* 100 F.3d 946 (3rd Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684-85- (9th Cir. l980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or

expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* does not mean that the prisoner's federal sentence commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568[7] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities.").

In the instant case, Petitioner was already in the primary custody of the state of West Virginia serving a sentence on a state court conviction at the time he was indicted on the federal charges. A review of his criminal docket reveals that an Order granting the government's motion for a writ of habeas corpus *ad prosequendum* was entered on May 12, 2016. See Case No. 1:16cr29, ECF No. 6, 7. As noted *supra*, the Detention Order was entered on May 20, 2016 without objection by Petitioner. Subsequently, Petitioner entered his plea to the federal charges and was later sentenced for the same. It is clear from the record that the District Judge denied defense counsel's request for a federal sentence that would be concurrent or partially concurrent with the state sentence that Petitioner was already then serving.

Accordingly, even though Petitioner was sentenced on October 28, 2016 to his 70-month federal sentence, that federal sentence did not *commence* until he had finished serving the state sentence he was already serving. Petitioner's claim that the sentencing judge intended that he would receive "credit for time served" notwithstanding, it is apparent that Petitioner has cherry-

---

[7] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

picked a statement from the sentencing transcript that he believes is favorable to him and ignoring the statements that are not. The excerpt from the transcript that Petitioner quotes was the sentencing judge's preliminary statement *about* the tentative sentence, before it was imposed, it was not *the* sentence, as the statement, set forth here in its entire context, reveals:

> THE COURT: . . . A sentence of 70 months with credit for time served, three years of supervised release and no fine. The mandatory special assessment has already been paid. There's no restitution or forfeiture issue in the case. Does the Government have any objection?
>
> MR. PERRI: No, Your Honor.
>
> THE COURT: Does the defendant, other than as already argued?
>
> MR. DYER: No, ma'am.
>
> THE COURT: All right. Mr. Kuroski, do you need to talk to Mr. Dyer before I impose the sentence?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Would you stand?

Case No. 1:16cr29, ECF No. 42 at 13 – 14. The excerpt from the sentencing transcript regarding the sentence that was *actually* imposed is:

> THE COURT: Okay. So, Kyle Kuroski, pursuant to the Sentencing Reform Act and the advisory guidelines and the statutory factors I've considered, I hereby commit you to the custody of the Bureau of Prisons for a term of 70 months. **This term of imprisonment shall run consecutively to the imprisonment imposed by the State of West Virginia that you're currently serving**.

Id. at 16 (emphasis added).

Therefore, to the extent the Petitioner requests credit for 13 months of time he spent in state custody before beginning his federal sentence, he is not entitled to the same because at sentencing, the Court made it clear that his federal sentence was to run *consecutive to* the state sentence. Thus, even though Petitioner was detained by federal authorities on May 20, 2016 on the writ, he was

11

merely 'on loan' to the same, to obtain his prosecution on the federal charges. The state of West Virginia always retained primary jurisdiction over him.  Therefore, after his federal sentence was imposed, he was returned to the state authorities to finish serving his sentence on the state charges at HCC, and was only relinquished to the BOP to commence serving his federal sentence once he had completely satisfied that state obligation. Thus, the entire 13 months and 11 days between the commission of his federal offense and the sentencing on those charges was all time spent serving his state court sentence, and he is entitled to no credit for that time on his federal sentence.

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that respondent' Motion to Dismiss, construed here as a motion for summary judgment [ECF No. 10] be **GRANTED**, and the petitioner's § 2241 petition be **DISMISSED with prejudice.**

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Kleeh.

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

Finally, upon entry of this Report and Recommendation, because this completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 6, 2020

/s/ Michael John Aloi
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE